Elsie OLSEN, as Administratrix of the Goods, Chattels and Credits of Ingolf Olsen, Plaintiff-Appellee,

v.

The NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.

No. 250, Docket 29057.

United States Court of Appeals Second Circuit.

Argued Dec. 15, 1964.

Decided Feb. 8, 1965.

George J. Engelman, New York City, for plaintiff-appellee.

Jerome H. Shapiro, New York City (Gerald E. Dwyer, New York City, on the brief; Henry W. Herbert, New York City, of counsel), for defendant-appellant.

Before FRIENDLY, HAYS and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge:

This is a diversity case under the New York Wrongful Death Statute, Decedent

Estate Law, McKinney's Consol.Laws, c. 13, § 130. The original action also included claims for negligence under the Jones Act and for unseaworthiness, but these were dismissed during the trial. Decedent was a commercial fisherman by trade and on June 10, 1959 he requested Captain Harry P. Jones, appellant's tugboat captain, to take him aboard appellant's tug "to show him what the deck hands were required to do." Around midnight Captain Jones took him aboard the tug for this purpose. Most of the time was spent in the pilothouse, although at least two trips were made by Jones and the decedent down to the galley for coffee. About five o'clock in the morning decedent left the pilothouse alone without telling anyone where he was going. Sometime thereafter the engineer heard a "hollow sound" on the deck and the oiler seeing a body fall into the water, halted the engines and gave the alarm. The tug dispatcher was notified by ship-to-shore phone of a request for assistance. The tug started its engines and swung downstream with the current to search for the decedent. The deckhands, one on the top of the pilothouse, one on the upper deck and another on the scow maintained a watch for decedent to surface. Decedent did not surface and his body was recovered two days later. A toxicologist who performed an autopsy on the body found that an ethyl alcohol content of more than .25 was in decedent's brain. He also testified that a man with that degree of alcohol in his system would have "both a central and a motor nervous depression, and he would not have control over any of those faculties that are controlled by that system. That would include his muscles, his speech, his sense of perception, his balance, and also his reflex time, his response, his time response to any stimuli."

On the other hand, Captain Jones testified decedent "appeared to be cold sober."

Appellant moved for a directed verdict at the close of appellee's case. The motion was denied. Appellant rested without calling any witnesses and renewed his motion for a directed verdict. It was again denied. After verdict for appellee, appellant's motion to set aside the verdict was likewise denied, D.C., 232 F.Supp. 28 (1964). We affirm the judgment below.

On this appeal appellant urges reversal on grounds of insufficient proof of negligence of appellant; contributory negligence as a matter of law; improper charge to the jury; failure to direct that decedent was improperly on board or at least to submit that issue to the jury; and an excessive damage award.

Decedent fell from the tug in the navigable waters of the East River. Since Maritime Law does not provide a remedy for wrongful death, the sole remedy is provided by the New York Decedent Estate Law. The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959). If decedent had survived his rights would have been determined by Maritime Law, Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). Appellee inherited these rights under Section 130 of the New York Decedent Estate Law.[1]

■■ Decedent was brought aboard the tug by its captain and "[i]t is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." Kermarec, supra, 358 U.S. at 630, 79 S.Ct. at 409. Appellant's argument that decedent's presence on the tug was in violation of an indefinite rule of

---

1. Decedent Estate Law § 130. Action by executor or administrator for negligence or wrongful act or default causing death of decedent:

"The * * * administrator duly appointed in this state * * * of a decedent who has left him * * * surviving a * * * wife, or next of kin, may maintain an action to recover damages for a wrongful act, neglect or default, by which the decedent's death was caused, against * * * a corporation which, would have been liable to an action in favor of the decedent by reason thereof if death had not ensued."

the appellant prohibiting the presence of unauthorized persons aboard its tugs is not persuasive. There was no evidence that anyone other than the captain had authority to decide who should or should not be aboard. Furthermore, the only evidence which could be interpreted as contradicting the positive testimony of the toxicologist that decedent was in a state of considerable intoxication, is the uncorroborated testimony of Captain Jones that decedent appeared to him to be "cold sober." It was admitted that he was permitted to go on the deck alone and there was photographic evidence of the unprotected portion of the deck at the place where his cap was found. There was no guardrail at this spot where decedent evidently went overboard. There was sufficient evidence for the jury to determine whether or not appellant exercised reasonable care under all the circumstances. "The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable," Schulz v. Pennsylvania R. R. Co., 350 U.S. 523, 526, 76 S.Ct. 608, 610, 100 L.Ed. 668 (1956).

■■ Decedent's voluntary intoxication would not constitute contributory negligence as a matter of law. The question was properly submitted to the jury. See e. g., Fardette v. New York & Stamford Ry. Co., 190 App.Div. 543, 180 N.Y.S. 179 (Sup.Ct. 1920), aff'd, 198 App.Div. 943, 189 N.Y.S. 943 (1921), aff'd, 233 N.Y. 660, 135 N.E. 959 (1922); Keefer v. Daum, 262 App.Div. 1044, 30 N.Y.S.2d 507 (1941); see also Duffy v. City of New York, 16 Misc.2d 1015, 184 N.Y.S.2d 1006 (Sup.Ct.1958), modified and aff'd, 7 App.Div.2d 988, 183 N.Y.S. 2d 863 (1959).

■ We find no error in the charge. Appellant objects to the following part of Judge Bonsal's charge on the question of negligence: "Now, the ultimate question, therefore, which you must resolve is what is reasonable under the circumstances. Now, of course, one set of circumstances might demand a slight degree of care and be termed reasonable while under another might demand the highest degree of care and foresight in order to be reasonable." Yet, the charge read in its entirety is adequate and without prejudice to the appellant. This is especially true in the light of the Judge's reply to a question from the jury after it had retired: "Intoxication per se is not contributory negligence, but it is a factor which you may consider with all the other factors in determining whether * * * [decedent] took reasonable precautions for his own safety."

 The damages awarded plaintiff were not excessive and no reversible error arose from the fact that the judge allowed the jury, in determining the amount of the award, to consider the pain allegedly suffered by decedent before death.

Affirmed.